The next case this morning is number 19-1677, Christopher Castagna et al. versus Harry Jean et al. How is your client's name pronounced, please? Castagna? Castagna. Okay. Good morning. Nicole O'Connor for Harry Jean, Keith Kaplan, and Duran Edwards. The district court in this case erred in two primary ways. The first is that it abused its discretion in that in weighing the evidence, it applied an incorrect legal standard. And second, the officers were entitled to qualified immunity. Why don't you start with the second argument? Sure. So in the qualified immunity argument, that review is de novo. And so all reasonable inferences are to be drawn in favor of the defendants here. And taking that view, the evidence here showed that this was an underage drinking party where at least one person had vomited outside of the apartment and then gone back inside. I thought there was no actual evidence on the age that the people there were actually of age. The plaintiff's witnesses testified that they were between 21 and 23. So the question isn't whether these... That would make them of age. Correct. But all of these officers testified, certainly nearly every officer who testified in the case, and certainly the three named defendants, when they approached this house, they could see through the windows that they thought that these folks were underage. And I don't think that that's an unreasonable conclusion. I thought the guy outside vomiting was said to be a teenager. Yes, that is what Detective Jean testified to. All right. I thought there was also evidence that there were complaints about beer bottles being thrown out of the window. Second story window, correct? Not first story, where this apartment was. Correct. That was the 911 call. But when these officers arrived on scene, the only loud party that they could discern was coming from the Castagna apartment. And when they looked through the windows, they saw individuals who they believed were underage were drinking. And Detective Jean saw at least one person, again, vomit outside the unit and go back inside, suggesting that this wasn't just potentially an underage drinking party. It was an underage drinking party where it had risen to an unreasonable level where one person has become ill. And so under these circumstances, it was not unreasonable, and these officers wouldn't have known, because it wasn't clearly established that they couldn't enter the apartment to check on the well-being of these underage drinkers at that time. Okay. So let's tease this out. The district court thought that it was perfectly plain and should have been plain to these officers that stepping inside an open doorway under these circumstances constituted a Fourth Amendment violation. But there are a few cases from other circuits that seem to say it's not a Fourth Amendment violation. Then we have the exigent circumstances, and then we have community policing. The way I read your briefs, you're raising all three of those arguments. Is that correct? Yes, though I think primarily we are suggesting that it was acceptable under exigent circumstances, specifically the emergency aid doctrine. Who was the person they needed to aid? The underage drinkers, and potentially the... Drinkers or the one kid? I think it's any of them. The district court can determine... It's your argument. Don't say, I think it's any of them. I apologize, Your Honor. It's any of these drinkers these officers could have gone in to assist. I think the district court, in determining that it was crystal clear that these officers couldn't have entered, was focusing entirely on the fact that the district court thought that the evidence weighed in favor of these officers believed that it was just a loud party, and they were there to quell a noise complaint. I would agree that the officers cannot enter to quell a noise complaint, but the district court ignored the evidence that this was an underage drinking party, as far as these officers were concerned. Do you also concede that it was clearly established that officers couldn't go in to quash a noise complaint? I would concede that for actions and circumstances. I think it's a bit more unclear with community caretaking. So you think the Sixth Circuit was wrong? Well, I think... In Rory, where it specifically said you could go in on a noise complaint. Then I'm not familiar with that case, but I will assume that the Sixth Circuit was correct then. In which case your answer is different? I don't think it matters here whether they could go in to quell a noise complaint, because I still think that that's ignoring the evidence in this case to suggest that this was... Well, you may say you have a stronger case for immunity, but why you would walk away from a case which helps you is beyond me. I wouldn't walk away from it, Your Honor. I'm just not familiar with it. So... You want us to say that any time police think that there's underage drinking going on in a building, in a home, they have a right to go into the home without a warrant? I'm saying it wasn't clearly established that they couldn't for qualified immunity purposes. If there is an underage drinking party, and at least one person is ill, I don't think there's any authority to suggest to these officers that it was clearly established that they couldn't go in. I thought that the officer's own testimony established that the reason they went in and searched out and went to the bedroom was because of the noise. But they also testified that they were concerned about the underage drinking party. I thought he just cited that as, well, that would be nice if that happened too. But that still is part of the record, that this was an underage drinking party. But they didn't search out or check any of the identification to prove one way or the other. Isn't that also the evidence in the case? Yes, and that would go back to my argument that the district court abused its discretion by considering the subjective mindset of these officers and determined that there was no reasonable basis for these officers to be entering. Because under qualified immunity, the test is no reasonably objective officer could have concluded that it would not violate the Fourth Amendment for him to enter under these circumstances. So the district court made an error of law in the qualified immunity analysis? Correct. But that's your argument? Yes, and there was also the district court case that was cited by the district court, in this case, Hitchcock v. Howes, where the officers were given qualified immunity for entering a loud party call. And even in that case, there wasn't any testimony that someone was ill or that someone was vomiting. But the court did note that if that had been the testimony, the case would have fallen much more squarely within the exigent circumstances exception. So it need not even address qualified immunity because on the merits, a teenager vomiting in an underage drinking party would be sufficient under exigent circumstances. On the state of mind, I certainly understand that we don't ask whether the officer thought the law allowed him to do it. We ask whether a reasonable police officer could have thought the law. And if a reasonable police officer could have thought he could do it, then this one gets off the hook even if he knew he couldn't. But the state of mind issue here is a little different than we're asking about. It's asking what was the basis for the police officer wanting to investigate and wanting to go in, not whether he thought he could go in. And it seems that it's rather odd that if he was entering because of the noise, that he could somehow then get off the hook by saying, well, he could have gone in for the drinking. What case says that at that level of subjective facts, we consider facts that weren't true? Well, there was evidence that they were concerned about the party. There was also substantial evidence that they were concerned about the underage drinking. They can exist at the same time. So why didn't they check the single persons? They didn't even ask anybody their age. Correct. Once they got into the unit for reasons that unfolded once they were inside. But the entry itself is judged by what a reasonable officer would have done. How about going into the bedroom? I agree that that's a tougher call. And certainly Kaplan and Edwards didn't go in the bedroom. So this would only be as to Harry Jean. But the law wasn't clearly established that it matters room by room in terms of Fourth Amendment analysis. So you think once you get in the front door, you can go careening through all the bedrooms and check out to see what's going on in the bedrooms without any warrant? At least it wasn't clearly established to the contrary. You think that's not clear that police officers need some reason to go into a bedroom in a home? Under McDonald's, they searched room by room. And I appreciate that the circumstances there were a bit different. But don't you have to have a reason that we can then assess whether it's an adequate reason? And the reason here was that the folks inside the unit pointed Harry Jean to this door. But at that point, it had nothing to do with underage drinking. We don't know. I thought they said they were looking for the owner in order to get him to shut down the party and among other things, stop the underage drinking. Exactly right. I would just touch briefly. I see that my time is waning here. But putting aside the qualified immunity argument, I don't even think we need to get there, as I said, because the district court— It actually works better the other way. If there is qualified immunity, you do not need to get to the new trial issues. Fair enough, Your Honor. Like Judge Kayada, I'm a bit concerned about establishing a principle that because you see a kid outside vomiting and you have complaints about a party and underage drinking, you can just go into the house. What are the other factors here that would end up being, if you will, limiting principles to narrow that? Sure, and I appreciate the court's concern. This wasn't just your average drinking party on a Saturday night. The testimony here was that this was St. Patrick's Day in South Boston, where public drunkenness, underage drinking, these are major problems on that particular day. So much so that these officers who entered the apartment were not even in the business of working in South Boston. They were drug control officers, not generally tasked with responding to large parties. But because drunkenness and underage drinking in particular is such a problem, they are assigned essentially mandatory overtime to work South Boston. But what I'm concerned by is that when they got there, what they saw was different from the complaint which brought them there in the first place. The original complaint was second floor beer bottles coming off the porch, a loud party on the second floor. When they got there, there was a vomiting person and the first floor party with an open door. And so they were confronted with a totally different set of facts. So why should they have assumed that this was the similar or same situation which allowed them to take the action of going into the apartment without a warrant? They didn't need the 911 call to get them there or to justify the entry. They don't have to ignore what they see when they arrive on scene. But it was the 911 call which got them there. It certainly was. And when they arrived, the only party that they could hear and the only unit from which loud noise and drinking appeared to be taking place was this particular unit. I'm guessing on St. Patrick's Day in Boston, there were probably more than several hundred parties going on where there was underage drinking. That is fair enough. So your proposition is the police could go out in a citywide drag deck and without warrants go into all of those homes? No, I'm saying it was reasonable considering that the 911 call directed them to this particular intersection. Well, if they walk down the street and they hear a party, that's all they need to know? Not just a party, but if you have a testimony which was here, that these officers saw what they believed to be underage drinkers. Okay, so let's limit it then to the hundred or so parties that have underage drinkers going in and out the door. Serving alcohol to underage is a crime, right? It is. So they can go in without a warrant, find the owner, arrest them, gather the proof, and haul them back to the station? If they have probable cause, I suppose. But here it was entering under the emergency aid. So, or community policing, I think the 911 call actually has some significance. They receive a complaint from someone who is concerned enough to dial the emergency number at the police department and ask the police to do something about it. But to follow up on Judge Stahl's question, were there beer bottles outside? There were not, that these officers saw. Okay. And none of the officers, as I understand it, had either sidearms or the usual police accoutrements, which go with they didn't have handcuffs, for instance, or none of the above. Correct, because the officers testified that they weren't intending to arrest folks. They just wanted to assist with these loud party calls and any underage drinking that might be taking place. And you don't think it was established that that was an improper assumption that they were making, that those facts made it possible for them to go in? Yes. What these officers confronted when they arrived on scene from the 911 call, being at the correct intersection, seeing a young man vomit outside the house and go back in, and seeing what they perceived to be as underage drinkers through the windows, it was a reasonable assumption for them to assume that this was the underage drinking party that was of concern. Thank you. Thank you. May it please the Court. Paul Clem for Christopher and Gavin Castanien. I'd like, if I could, to start off with the Rory case, if I might. That's a Sixth Circuit case from 1996. The difference in that case is that in that case the people were outside in their pajamas. They were complaining about an ongoing noise that had been going on for a long time. And they needed the noise turned down. And then when the officer actually went into the home, the noise stayed on, the music stayed on for quite a period of time. It's distinguishable here. There was not that sense of an ongoing wrong in this case as opposed to in Rory. I'm sorry. Are you saying the officers showed up and suddenly the house was quiet and not loud and there was no party going on? Are you talking about in Castanien's situation, Your Honor? This case? Yes. They showed, at the time they showed up, there was music. There was music. It was loud and there was obviously a party going on. And the door was open and they saw people coming in and out. Right. Your Honor, in Barbosa, Judge Dean wrote that Rory is distinguishable on these facts. Judge, I'm sorry, you're shaking your hand. Judge Dean has said that they could not go into a house because of a loud party call. And she distinguishes Rory on the basis that it was an ongoing situation in Rory, unlike in this case. Yes, there was. Okay. Tell me again why this wasn't ongoing. It was ongoing in the sense that, well, okay, Your Honor, there was a call made an hour and a half earlier of, as Judge Stahl points out, of something going on in the second floor apartment. Here we're on the first floor. We don't have knowledge as to how long it was going on, other than at the time the officers arrive, they hear something. And the only time it lasts is for them to walk from their cars. They didn't run. There was no emergency situation. They walked from their cars to the house. Once they get the attention of the homeowners, the music gets turned down. It's very different from Rory. When does the music get turned down? After they're in the bedroom and they've talked to the owner? You mean other people turn down the music? The music gets turned down once the officers go into the house. In fact, Officer Kaplan even says that the homeowners were cooperative. I mean, the people in the house were cooperative. But not the owner. They keep trying to find the owner, and nobody can tell them where the owner of the house is until somebody finally says, gee, I think he's in the back bedroom. The issue, though, is that getting into the house in the first place. And what they had said early on was that it was because of the loud music that that's what caused them to go in. Then it was they went in because of some exigent circumstance, which comes down to two things. There's this alleged teenager. No one has confirmed that there ever was a teenager who came outside, vomited twice, and then they're out. You have to take that as a given. What is a given, Your Honor? You have to take that version as a given for purposes of qualified immunity. But Judge Tawani points out that no one else corroborates. So what? So what? That's on the new trial motion. Well, it's relevant, Your Honor, because there's nothing else that says. She can't make credibility determinations on qualified immunity. But I believe she is making a credibility determination, Your Honor. I think what she's doing is she's saying, Detective Gene saw someone who appeared to be a teenager who came out, vomited twice, and went back in. But no one else is seeing that that happened. And, Your Honor, what's really important is once they get in. No one else testified to it. That's fair. But what's really important, Your Honor, is once they get in, Detective Gene, in fact, no one goes to look for this teenager. Detective Gene goes and stands outside that room and waits, waits, waits. That is not consistent with some emergency that requires them to book the delay of getting a warrant and have to run in. So let's break this down a little. And you started, I think, where you should start, which was the Sixth Circuit case. Was it Rory? Rory, yeah. Isn't this materially indistinguishable as far as getting them into the house? And your point is that after they were in the house, in this case, the guests turned down the music, whereas in Rory, they didn't turn down the music until the owners were found. Well, that is certainly helpful. But what other material difference is there between the cases? I don't think there is a material difference except for the delay in time once the officer is in the house until the music is turned down. Whereas in our case, the music is turned down. Rory would seem to say if we assume Rory is correct or if the officers had assumed Rory was correct, then they could enter the house to ask that the music be turned down. Could you ask that again? I apologize. Sure. If Rory is correct, then the officers could enter the house to ask that the music be turned down. If Rory is correct, then, again, it's a Sixth Circuit case, but if it applies here, then they could get into the house, but once that music is turned down, they have no reason to be there. So that's the issue, then, that would distinguish Rory. And so what case law would they look to that would say once a guest turned down the music, they couldn't make sure the owner who was controlling the place understood that the music wasn't to be turned back up and whatever? I think that Kaiser is of help in this case. That's a case that said the owner said the Massachusetts appellate case. It is a Massachusetts appellate case. It is a case that's cited in Barboza by Judge Dean. Barboza itself is helpful in this case. What you have to look at is what happened inside indicative of whether or not they should have gone inside that home at all. Well, that's hindsight. Well, but in Barboza, for instance, the officer, once he's inside, he later claims that he was there to take care of the children, but in reality, that wasn't the case. He was there to try to form further an investigation. Now, granted, that's a community caretaking exception case, but it does apply here. The fact is that there are two ways they try to get in, this teenager and the underage drinking. They never check any IDs, as I believe one of you mentioned, and then as to this alleged teenager, there's no looking for the teenager, which is not indicative of what you would expect. Well, their argument, the kind of argument for that was that the facts which were on the ground changed the situation. It was a, I think they said a wall of people on one side, they couldn't make anybody out, and they said, well, where's the owner? And they pointed to the back. So, well, I'd like to step back a little bit. Would you say that it was also improper for them simply to enter the house or was it the entering of the bedroom that you relied on? Both are wrong. The bedroom, the music's already turned down, there's no basis to go into that bedroom whatsoever. But I still contend that you can't get into the house either. Your Honor, what they should have done was stood outside, gotten the attention of the people inside, or as Judge Talwani says, at most a step or two in. But there are cases that say even a quarter of an inch is an unlawful intrusion. But just gotten the attention of the people in that kitchen, this video they show, they clearly look over 21, but told them to turn down the music. And then none of this would have happened whatever followed. But instead we have a situation where eight officers go into the house. And in picking up what Your Honor said, there's no evidence in the record that says that any of those eight officers said where is this alleged teenager, where is this alleged sick person. There's an effort to go find the owner, but not this emergency. And the case law is so clear, like in Brigham City, about what you need to be able to run into a house, or Michigan versus Fisher. I mean, there has to be a very serious situation going on. In Brigham City there was a fight. A person had been punched, an adult had been punched. There was going to be more going on after that. It was clear the fight wasn't going to end. You need police to go in. There's none of that sense here whatsoever. Let me get you back to they're in the house. They assume, and I know you don't concede, they assume they are entitled to go in to ask that the music be turned down. A guest turns it down, somebody turns it down, but they haven't got closure with the owners. But they then leave, like you say they should, and two minutes later the music's turned back up. And they were back in again. The owner replied, hey, no one told me there was any problem. Can't they, while they're in there, at least deal with the responsible person to let them know the nuisance they're creating? Yes, I think they can do that. The way they handled it here, though, was improper. There's testimony about the fact that Officer Kaplan was talking to other people in that room. They could have gotten someone to go get the person. I mean, it's a closed door. It's a closed bedroom. They should have known that they couldn't get into that bedroom at all. And so they should have had someone come out to them. The music's already turned down. There's no ongoing harm at that point. What role are they in that house for, and why are there eight of them? There's no need for eight people to be in there showing a force. They could have just simply handled it a very different way. I should point out that the community caretaking exception here, I thought that was the main reason for this, but community caretaking exception does not, certainly doesn't apply. This is, as I discussed in my brief, and Katie, this has been around since 1973, I think, but it hasn't been applied in this circuit to homes. And, yes, there's this Madelon and McDonald back and forth, but really the issue comes down, for qualifying community purposes, is does it fall within the heartland? And this is a case where you can't get into that house just because of loud music. You can't. And you can't get into the house we've shown because of the alleged underage drinkers or because of this alleged teenager. And so there is no basis whatsoever to go into that house, and so we are way outside of that heartland. I mean, no, if you're going to ask me are there specific cases on point on this, no, there are not. But the case law is clear that none of the bases that the defendants have alleged for going in are valid. And in the absence of that, then qualifying the community doesn't protect them. Your Honor, as I see that, my time is almost up. Unless Your Honor has any other questions, I will rest on my brief. No. Thank you very much. I'll rise. This session of the United States Court of Appeals is now recessed until 9.30 tomorrow morning. Five states and the United States are recommended on record. Thank you.